Cleveland, Cincinnati, Chicago and St. Louis Ry. Co.

*v.*

The Polecat Drainage District.

*Opinion filed December 22, 1904.*

1. EMINENT DOMAIN—*a public use may be local.* It is not essential to the public character of a use that the entire community or people of the State, or any political subdivision thereof, shall be benefited by such use.

2. SAME—*use must be controlled by law to make it public.* To be public the use must concern a community as distinguished from individuals, and must be controlled by law after the condemnation of property therefor.

3. SAME—*when drainage ditch is a public use.* The use of land for the construction of a ditch of a drainage district organized under the Drainage and Levee act of 1879 is a "public use" and the ditch is a "public work," within the meaning of section 2 of the Eminent Domain act.

4. DRAINAGE—*district organized under Levee act may acquire land by condemnation.* Since the method prescribed in the Levee act of 1879 for acquiring land for the construction of drainage ditches "across the lands of others" is unconstitutional, a district organized under such act may acquire land for such ditches by proceeding under the Eminent Domain act.

5. SAME—*legality of district's organization cannot be questioned in condemnation.* The *prima facie* legality of the organization of a drainage district under the Levee act of 1879 cannot be questioned in a proceeding by the district to condemn land for a ditch.

6. INSTRUCTIONS—*when instruction as to credibility of witness is erroneous.* An instruction in a condemnation case that the jury "are not bound to believe the testimony of any witness as to cost of railroad or other bridges, who testifies that he is not acquainted with the location of the proposed bridges and never saw the location of the bridges that are now there," etc., is erroneous and prejudicial, where but one witness testified on the subject of such bridges and his testimony is misrepresented in the instruction.

APPEAL from the County Court of Coles county; the Hon. T. N. COFER, Judge, presiding.

H. A. NEAL, R. G. HAMMOND, and F. K. DUNN, for appellant.

A. C. Anderson, and Edward C. Craig, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

This was a petition filed by the appellee drainage district under the provisions of the Eminent Domain act, for the condemnation of the right of way for the ditch of the drainage district in the bed of a natural water-course, across the right of way of the appellant company at two points. The appellant filed a cross-petition, asking for an assessment in its favor for damages to property not taken. A hearing resulted in an order granting the relief prayed for in the petition, at petitioner's cost, on the payment to the appellant company of the sum of $40 for the property taken and the sum of $1000 damages to property not taken.

The appellee district was organized under the provisions of an act of the General Assembly adopted May 29, 1879, familiarly known as the Drainage and Levee act, which act constitutes paragraphs 1 to 74, inclusive, of chapter 42 of Hurd's Statutes of 1899. The contention of the appellant company that the said act provides a mode of procedure for the condemnation of the lands of others for use as a right of way of the drainage ditch, and that as the statute which gives the right of condemnation provides the remedy such remedy is exclusive and no other can be availed of, is not sound, for the reason that the remedy provided in the said act is in violation of constitutional guaranties of the citizen, as we held in *Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310, and that being true, in legal effect the act provided no remedy whatever for the condemnation of the lands of others. Section 2 of said act of May 29, 1879, under which the appellee district claims corporate existence, authorized drainage districts formed thereunder to construct drains or ditches "across the lands of others." This enactment was adopted in pursuance of the provisions of section 31 of article 4 of the constitution of 1870, as amended November 28, 1878, (1 Starr & Cur. Stat. 1896, p. 138,) and

which authorized the General Assembly to pass laws to provide for the organization of drainage districts with power to construct drains, ditches and levees "across the lands of others."

The question first arising is, as the remedy for condemnation provided by the act has proven inoperative and void, may such districts avail themselves of the Eminent Domain act in order to procure the right to construct their ditches across the lands of others. The power of eminent domain can only be exercised when the property to be taken is to be devoted to a public use. A public use means public usefulness, utility, advantage or benefit. It is not essential that the entire community or people of the State, or any political subdivision thereof, should be benefited or share in the use or enjoyment thereof. The use may be local or limited. It may be confined to a particular district and still be public. (10 Am. & Eng. Ency. of Law,—2d ed.—1063.) If local or limited, the use must be directly beneficial to a considerable number of the inhabitants of a section of the State, and the property to be taken must be controlled by law, for the advantage of that particular portion of the community to be benefited. Private property cannot be condemned by a person or corporation on the ground the general prosperity of the State or community would be promoted thereby, if the title to the property so taken is to be vested in such person or corporation as private property, to be used and controlled as other private property. To be public the use must concern a community, as distinguished from an individual or any particular number of individuals, and then, to authorize the condemnation of private property, the law must control the use to be made of the property, after it has been condemned, to the end that it shall be devoted to the public purpose which alone could justify the taking of the same from the owner without his consent. Tested by these observations, and in view of the amendment to the constitution authorizing drainage districts to construct their drains across the lands of

others, the use of lands for the purpose of constructing thereon the ditch of a drainage district organized under the said statute is a "public use," and such ditch dug for that purpose is to be regarded as a "public work," within the meaning of those words as used in section 2 of the Eminent Domain act. Having the right, by virtue of the constitution and the laws made in pursuance thereof, to construct their ditches "across the lands of others," and the use to be made of such ditches being a public use, we entertain no doubt of the power of drainage districts to avail of the provisions of the Eminent Domain act to enable them to obtain the legal right to the right of way through and over the lands of others for their ditches.

The question whether the appellee drainage district had been legally organized did not and could not arise in the proceeding for the condemnation of a right of way for the ditch across the lands of the appellant company. A petition to the Coles county county court for the entry of an order creating the district and a final decree or order of the said county court establishing the district were produced in evidence. The statute invested the county court of that county with jurisdiction to entertain petitions for the formation of drainage and levee districts and to enter final order establishing such districts. Jurisdiction and power were therefore vested in the county court to determine whether the petition bore the signatures of the requisite number of qualified petitioners and was in other respects in compliance with the statute. Whether it correctly exercised such power or jurisdiction could not be considered in this a collateral proceeding. The final order of the court having jurisdiction of the person and subject matter, cannot be inquired into and impeached in a collateral proceeding. (*Figge* v. *Rowlen,* 185 Ill. 234.) The legality of the organization of a drainage and levee district can be attacked and brought under judicial review only in a direct proceeding by *quo warranto.* (*Osborn* v. *People ex rel.* 103 Ill. 224.) The trial court therefore properly refused to con-

sider the issue sought to be introduced by the appellant company whether the petition for the formation of the drainage district contained the number of qualified petitioners required by section 2 of the act of 1879.

The petition asked the condemnation of two separate strips of land, each sixty-six feet in width and one hundred feet in length, across the right of way of the appellant company. Polecat creek ran through and crossed the right of way of the railroad and returning again crossed the right of way, and the railroad company had a bridge over the stream at each crossing. The drainage district proposed to widen and deepen the bed of the stream at each of the crossings, thereby making a ditch thirty feet in width at the top at both places. The appellant company claimed that this would necessitate the tearing away of all or a portion of each of the bridges and re-building the same, and by its cross-petition sought an assessment of the damages and expense thereby to be occasioned. In support of this claim the appellant company introduced as a witness Charles Fisk, assistant civil engineer of the appellant company, who testified that the damage which would thereby be occasioned at the more westerly bridge would range from $2000 to $3000 and from $3200 to $3500 at the more easterly crossing. On cross-examination the witness stated that he had examined the bridges several times when passing over the road on a train; that he never stopped and inspected the bridges, or either of them; that the east bridge was not an old wooden bridge; he admitted that it would not be necessary to tear out the bridges if the drainage district could and would lift the dredge-boats over them; that he had had no experience in dredge-boat work, but had never heard of lifting a dredge-boat and carrying it over a railroad track. There was no other proof relative to the damages that would be occasioned to the appellant company, or as to the expense which would be entailed upon it, by the construction of the ditch across the right of way and under its tracks and bridges. The jury

allowed $1000 as damages to land not taken. Appellant contends that this finding is contrary to and wholly irreconcilable with the testimony of Mr. Fisk, the only witness who was examined on that branch of the case. The testimony of Mr. Fisk was merely by way of estimates not made upon any careful personal examination of the bridges, and in view of the fact that the jurors visited and inspected the bridges we would be loth to interfere with the verdict if the jury had been left free to exercise their own judgment as to the weight and value of the testimony of Mr. Fisk. Instruction No. 12, given to the jury at the request of the appellee district, improperly interfered with the province and duty of the jury to fairly and correctly consider and weigh the testimony of that witness. It read as follows:

12. "The court instructs the jury that they are not bound to believe the testimony of any witness as to cost of railroad or other bridges, who testifies that he is not acquainted with the location of the proposed bridges and never saw the location or the bridges that are now there, but should give the testimony such weight, if any, to which you may, from all the evidence in the case, believe such witness' testimony may be entitled."

As no other witness than Mr. Fisk testified on behalf of either party as to the cost of the bridges or the expense of re-building or partially re-building them, the instruction must, of necessity, have been intended and understood by the jury to apply only to his testimony. This witness did not, as the instruction told the jury, testify that "he was not acquainted with the location of the bridges and had never seen the location or the bridges," but, on the contrary, he testified he had examined them several times when passing over them on trains. He testified he was a civil engineer, had seen the bridges, denied that the more easterly bridge was an old wooden bridge, and gave his estimate of the expense that would attend the changes made necessary by enlarging the channel below the bridges. By the instruction the testimony

of the witness was incorrectly stated, and the erroneous state-ment declared sufficient to warrant the jury in refusing to believe his testimony. It was for the jury—not the court—to determine as to the credibility of the witness. True, the instruction, in the closing part thereof, told the jury that they should give to the testimony of the witness such weight, if any, which they might believe, from all the evidence in the case, his testimony was entitled to have; but the whole in-struction considered together, carried it to the jury as the view of the court that the witness was not worthy of belief or his testimony entitled to any weight. The instruction was an unwarranted invasion of the province and duty of the jury to fairly consider and weigh the testimony of the wit-ness. It was error to give it, and the effect certainly preju-diced the cause of the appellant company, possibly to the extent of depriving it of any benefit whatever from the testi-mony of the witness.

Counsel for the appellee insist the judgment should not be reversed for this error, for the reason the only damages claimed under the cross-petition were for the expense of en-larging, constructing, re-constructing, replacing or repairing the bridges, embankment and grade on the line of a natural water-course, and that the third proviso to section 55 of the Drainage and Levee act aforesaid, and section 56 of that act, require that the railroad company shall defray all such ex-pense, and that therefore no award for damages whatever could have lawfully been made in favor of the railroad com-pany, and hence that the appellant company had no legal right to recover because of anything testified to by the wit-ness Fisk. Said amended section 55 provides, in effect, that when any ditch, drain or levee will benefit any public or cor-porate road or railroad, the commissioners shall apportion to the county, State or free turnpike road, to the township if a township road, to a company if a corporate road or rail-road, "such portions of the cost and expenses thereof as to private individuals," and in case such apportionment is re-

sisted the matter shall be submitted to the jury. The first proviso to the section authorizes the drainage commissioners and "the corporate authorities of the county, State, or free turnpike, township road, corporate road, or railroad, or any of them," to stipulate as to the amount of such benefits. The second proviso is, "that the amount so assessed against any railroad company or private corporation shall" become a lien, and provides for the collection and for the payment of assessments against public corporations. The third proviso to the section is as follows: *"And provided further,* that the sum assessed against either of said corporations shall not include the expense of constructing, erecting or repairing any bridge, embankment or grade, culvert or other work of the roads of such corporations, crossing any ditch or drain, constructed on the line of any natural depression, channel or water-course; but the corporate authorities of such road or railroad, are hereby required, at their own expense, to construct such bridge, culvert, or other work, or to replace any bridge or culvert temporarily removed by the commissioners in doing the work of such district. Full power and authority is hereby given the drainage commissioners to remove such bridges or culverts for the purposes aforesaid, if they, in their judgment, find it necessary." (Hurd's Stat. 1899, p. 682.) Section 56 of the act makes it the duty of railroad companies, "when any ditch or drain or other work of enlarging any channel or water-course is located by the commissioners on the line of any natural depression or water-course, crossing the road of any railroad company where no bridge or culvert or opening of sufficient capacity to allow the natural flow of water of such ditch or water-course is constructed," on notice given by the commissioners, to construct such bridge or culvert according to the requirements of the commissioners.

Section 13 of article 2 of the constitution of 1870 declares that private property shall not be taken or damaged for public use without just compensation, and if the third

proviso to said section 55, and section 56, are in conflict with this constitutional guaranty, in that they purport or have operation to authorize the taking or damaging of the property of the appellant company without just compensation, they must, of course, be deemed inoperative and void.

The appellee drainage district filed the petition herein, averring that it possessed the legal right to construct its drains and ditches across the right of way of the appellant company and the lands of other property owners, defendants to the petition, on payment of just compensation; that it had been unable to agree as to the compensation to be paid to the appellant and the other property owners, defendants to the petition; that it desired to take, for the purposes of "widening, straightening, deepening and enlarging a ditch and water-course," two strips of land, each sixty-six feet in width, across the right of way of the appellant company, and prayed that the just compensation to be paid for the same should be assessed "in accordance with the law." The appellant company filed a cross-petition, in which it claimed damages to property not taken in addition to just compensation for that to be taken. A jury was empaneled and the evidence as to the value of the land to be taken and as to the damages to lands not taken,—that is, to the bridges and embankments,—was submitted, no question being raised relative to the duty of the railroad company, under said third proviso to section 55, and section 56, of said Drainage act, to enlarge the opening in its embankment and remove and enlarge its bridges, etc. Nor do we find anything in the proof to indicate that the drainage district claimed a right of way for its ditch as an easement of a waterway or without compensation, or that the notice required by section 56 had been given.

Neither the suggestion of counsel that under said proviso to section 55, and under said section 56, the appellant company can recover nothing, either as compensation for lands taken or as damages to lands not taken, nor the sup-

posed conflict between said proviso to section 55 and said section 56 and the constitutional guaranty hereinbefore mentioned, is presented by the pleadings in this record for our consideration.

On the record before us the judgment must be reversed, and the cause will be remanded for such other and further proceedings as to law and justice shall appertain.

*Reversed and remanded.*