### NATIONAL LABOR RELATIONS BOARD v. J. I. CASE CO.
#### No. 8149.

Circuit Court of Appeals, Seventh Circuit.
Feb. 26, 1943.

Robert B. Watts, Ernest A. Gross, Robert Todd McKinlay, Howard Lichtenstein, Asst. Gen. Counsel, and Owsley Vose, and Jacob I. Karro, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Ben T. Reidy, of Rock Island, Ill., and Clark M. Robertson and Howard R. Johnson, both of Milwaukee, Wis., for respondent.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioner seeks to have enforced its order entered in mid-summer, 1942, directing respondent to cease and desist from certain acts declared violative of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and to give notice of such action.

Beginning with 1937, respondent tendered to each of its employees at its Rock Island manufacturing plant a contract fixing wages and terms of employment for a year ending July 31, to be renewed from year to year, that in effect at the time of the hearing expiring July 31, 1942. Execution of this agreement was entirely voluntary, and in no way a condition precedent to initial employment or to continuation of employment. Approximately 75 per cent of the employees signed.

On January 26, 1942, an election having been held to determine the collective bargaining agent of the employees, at which 352 votes were cast for International Union United Automobile, Aircraft & Agricultural Implement Workers of America, C.I.O., herein termed the Union, and 190 against, the Board certified the Union as the exclusive bargaining representative. On March 7, the Union requested the plant manager to bargain collectively with it, with respect to wages, hours and other conditions of employment, as the exclusive representative of all employees. Respondent refused, declaring that respondent could not negotiate with the Union in any matter affecting the rights and obligations of respondent and its employees "under the individual contracts while the contracts remain in full force and effect." It expressed willingness to bargain on all matters which did not affect the rights of the respective parties under the contracts and to deal with the Union as exclusive bargaining agency upon all matters upon their expiration and, by letter, notified its employees of its decision, saying in part: "In other words, the Union has taken the position that the company must tear up its contracts with its individual employees and disregard the rights and obligations of its employees and of itself under those agreements. The Company believes and has been advised that the contracts for their term constitute legal and binding obligation both on the part of the Company and on the part of the employees, and that its individual employees have constitutional rights which they are entitled to have preserved and which the Company has no right to surrender."

The Board interpreted this action as refusal upon respondent's part to bargain collectively and further held that, by writing the letter referred to, the employer had interfered with, restrained and coerced its employees in the exercise of their rights guaranteed by Section 7 of the Act. It insists here that, though respondent may enter into voluntary contracts with its individual employees, the existence of such agreements does not relieve it of its statutory duty to bargain collectively with the designated agent as the exclusive representative of the employees and that the power and right of the employer and employees to enter into individual contracts must be subordinated to and so effectuated as not to interfere with full achievement of the purpose of the Act, i. e., collective bargaining with the selected agency as the exclusive representative of all employees, and that to assert, as respondent did, that it would not bargain collectively except subject to and in accord with existing contracts, was per se a failure to bargain collectively.

Respondent, on the other hand, contends that, inasmuch as the contracts had been entered into between its employees and itself in good faith and were still in effect, to require collective bargaining as to the subject matter thereof was to interfere with freedom of contract; that the Act does not contemplate or require such interference with respondent's constitutional right to contract freely with its employees and that the Board in its findings and conclusions exceeded its constitutional and statutory power.

Thus our rather narrow question is whether existing individual agreements with employees must yield to and be subordinated to the duty of the employer to bargain collectively with the Union as the exclusive agency, designated by law.

More specifically respondent insists that, under the language of N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U. S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A. L.R. 1352, the duty of the employer to bargain collectively with the designated agency does not preclude "such individual contracts as the company may elect to make directly with individual employees" and asserts further authority for its position in the language of this court in N. L. R. B. v. Bear Brand Hosiery Co., 7 Cir., 131 F.2d 731. However, we believe that other decisions of the Supreme Court remove any uncertainty as to the full scope of the statutory duty of the employer to bargain collectively with the selected agency and as to the relationship of individual contracts with such duty, and establish the rule that inasmuch as the Act was expressly intended to promote and enacted under the constitutional congressional right to protect commerce, any existing contractual right interfering with effectuation of the legislative intent must yield to the duty imposed upon both employer and employees. Thus in National Licorice Co. v. N. L. R. B., 309 U.S. 350, at page 364, 60 S.Ct. 569, at page 577, 84 L.Ed. 799, the court said: "The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices. * * * Obviously employers cannot set at naught the National Labor Relations Act by inducing their workmen to agree not to demand performance of the duties which it imposes or by insisting more than in a private litigation, that the employer's obedience to the Act, cannot be compelled in the absence of the workers who have thus renounced their rights."

It follows, we think, that the duty to bargain collectively is necessarily paramount to the freedom of contract enjoyed prior to enactment of the statute or before a collective agent has been chosen. When once the majority of the employees have exercised their right to choose a representative for bargaining, the employer's obligation to deal exclusively with such representative as to all terms and conditions of employment becomes unconditional irrespective of any individual bargain previously made. This is in accord with the rule announced in other decisions establishing the constitutionality of similar legislation. Contracts must be understood as having been made not only with reference to existing legislation but also with reference to the possible exercise of any rightful authority of the Government, and no obligation of existing contracts may be invoked to defeat that authority. Knox v. Lee, 12 Wall. 457-549-551, 20 L.Ed. 287; Norman v. Baltimore & O. R. Co., 294 U. S. 240, 305-311, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 456, 42 S.Ct. 363, 66 L.Ed. 708; Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145; Interstate Cir., Inc., v. U. S., 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610. "Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process. * * * That [the power to restrict freedom of contract] may be exercised in the public interest with respect to contracts between employer and employee is undeniable. * * * the fact 'that both parties are of full age, and competent to contract, does not necessarily deprive the state of the power to interfere.'" West Coast Hotel v. Parrish, 300 U.S. 379, 391, 392, 394, 57 S.Ct. 578, 581, 81 L.Ed. 703, 108 A.L.R. 1330.

Whether we look upon the power of the Congress to enact such legislation as the exercise of a police power growing out of the commerce clause, such as is the source of power of the State in regulation of its citizens' activities, State Public Utilities Comm. v. Quincy, 290 Ill. 360, 125 N.E. 374; Schiller Piano Co. v. Illinois Northern Utilities Co., 288 Ill. 580, 123 N.E. 631, 11 A.

L.R. 454; Integrity Mut. Ins. Co. v. Boys, 293 Ill. 307, 127 N.E. 748; Ward v. Farwell, 97 Ill. 593, or whether we characterize it by other appropriate terms, all citizens, in their relationship one to the other, must so act and so contract as not to interfere with or infringe upon full execution of the constitutional power. Inasmuch as the Congress has been authorized by the constitution to enact the National Labor Relation Act, it follows that subsisting agreements, negativing, abridging or infringing upon full effectuation of the legislative purpose must fall. We can not believe it was the purpose of the Supreme Court in the Jones & Laughlin case to limit this doctrine in any wise. To attribute such an intent to the court is to infer necessarily that it intended to overrule the reasoning of many authorities to the contrary. Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 42 L. Ed. 780; Knoxville Iron v. Harbison, 183 U.S. 13, 22 S.Ct. 1, 46 L.Ed. 55; Patterson v. The Eudora, 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002; McLean v. Arkansas, 211 U.S. 539, 29 S.Ct. 206, 53 L.Ed. 315; Chicago B. & Q. R. Co. v. McGuire, 219 U.S. 549, 567, 31 S.Ct. 259, 55 L.Ed. 328; Bunting v. Oregon, 243 U.S. 426, 37 S.Ct. 423, 61 L.Ed. 830, Ann.Cas.1918A, 1043; New York Cent. R. Co. v. White, 243 U. S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A. 1917D, 1, Ann.Cas.1917D, 629. It follows that inasmuch as respondent's action denied full force and effect to the provisions of the National Labor Relations Act, the Board rightfully directed it to cease and desist.

■ In view of our conclusion, respondent's communications to its employees were improper. Inasmuch as it could not rightfully refuse to bargain because, as it said, it was barred by various individual contracts, and inasmuch as the premise was unsound, it was improper to submit it to its employees as a circumstance influencing their action in selecting or recognizing a bargaining agent. The erroneous conclusion contained in the quoted language of its letter was such as to advise the employees that respondent considered that it had been wrongfully directed to bargain collectively without regard to the existing contracts. In taking this position, as we have seen, it was mistaken, and to bring to bear, as an influential factor upon its employees, the use of the erroneous conclusion, was an invasion of that neutrality required of employers in dealing with their employees prescribed by the act.

■ However, one provision of the order, we think, is unjustified. The only complaint made against respondent or justified by the evidence was that it had erred in concluding that it had the right to insist upon the individual contracts in face of the statutory requirements to bargain with the exclusive bargaining agent selected. It erred as to its legal duty and in advising its clients of this erroneous position; beyond that there was no complaint. The individual contracts out of the way, respondent exhibited a perfect willingness to bargain collectively with the designated agent. Consequently the Board had jurisdiction only to order respondent to cease and desist from the conduct complained of. The additional paragraph directing respondent to cease and desist from "in any manner" interfering with its employees in the exercise of their rights of self-organization and of bargaining collectively was a gratuitous, extraneous exercise of authority by the Board unjustified by the facts. N. L. R. B. v. Express Pub. Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; N. L. R. B. v. Stone et al., 7 Cir., 125 F.2d 752; Aluminum Ore Co. v. N. L. R. B., 7 Cir., 131 F. 2d 485.

The order is modified by eliminating therefrom paragraph 1(c) and, as modified, enforced.