John P. Cohalan, Jr., J.
Availing itself of the provisions of articles 15 and 15-A (Urban Renewal) of the General Municipal Law, the Town of Islip in Suffolk County (hereafter Town), has commenced condemnation proceedings against a 414-acre tract of land in the northwest corner of the Town, known locally as the “ Brentwood Pioneer Project ”.
The public records indicate that within the confines of the acreage there are 281 different owners holding 680 separately owned groups of parcels, only 11 of which constitute improved property. The Town authorities have declared it to be a substandard and blighted area (General Municipal Law, § 505).
The avowed purpose of the condemnation proceeding is as a step towards redevelopment by a private corporation. The constitutionality of the statute (L. 1961, eh. 402, as amd.) has been upheld in Cannata v. City of New York (11 N Y 2d 210). At page 215, Desmond, Ch. J. (speaking of section 72-n, a forerunner of the present Urban Renewal statute), noted that: “ We see nothing unconstitutional on the face of this statute or in its proposed application to these undisputed facts. Taking of substandard real estate by a municipality for redevelopment by private corporations has long been recognized as a species of public use (Matter of Murray v. La Guardia, 291 N. Y. 320; see Kaskel v. Impellitteri, 306 N. Y. 73, cert. den. 347 U. S. 934; Cuglar v. Power Auth. of State of N. Y., 3 N Y 2d 1006). The condemnation by the city of an area such as this so that it may be turned into sites for needed industries is a public use (see Graham v. Houlihan, 147 Conn. 321; Opinion of the Justices, 334 Mass. 760; Wilson v. Long Branch, 27 N. J. 360; People ex *388 rel. Adamowski v. Chicago Land Clearance Comm., 14 Ill. 2d 74; Berman v. Parker, 348 U. S. 26).”
Petitioner does not attack the constitutionality of the act as such hut states that the steps taken hy the Town, by its Urban Renewal Advisory Board, and by its corespondent, Heatherwood Industrial Park, Inc. (hereafter HIP) in pursuance thereof, were not in compliance with the procedures mandated in the statute by the Legislature.
The over-all plan contemplates an eventual conveyance by the Town to HIP after condemnation has been effected. The consideration is to be the amount paid by the Town for the properties acquired, plus all expenses incurred in connection therewith.
In his attack on the modus operandi employed, petitioner has advanced seven points, summarized and synopsized as follows:
1. The consummation of the plan would constitute an unlawful gift of public land to HIP by the Town, in violation of the State Constitution (art. VIII) and certain designated statutes;
2. The designation of HIP as the “ qualified and eligible sponsor” (General Municipal Law, § 507, subd. 2, par. [c]) was illegal;
3. The purpose of the statute is being violated;
4. No minimum price has been set for the conveyance to HIP; the minimum price to be paid by HIP fails to relate to market value and is thus illegal; and HIP will profit illegally by the transaction ;
5. Respondent Town and its agencies failed to secure the best return from town; and the open bidding requirements of the law (General Municipal Law) were violated, as well as article XVIII of the State Constitution;
6. The advertising leading up to the adoption of the plan, was illegal; and
7. Condemnation of the properties by the Town without first appropriating Town funds to pay for them is unlawful and in violation of the State Constitution, the Suffolk County Improvement Act and related statutes.
The several points shall be dealt with seriatim.
(1)
“ Taking of substandard real estate by a municipality for redevelopment by private corporations has long been recognized as a species of public use ” (Cannata v. City of New York, 11 N Y 2d 210, 215). This answers any objection that the plan is contrary to the provisions of section 1 of Article VIII of the State Constitution or of any statute enacted in pursuance thereof.
*389 (2)
Before HIP was finally selected as the sponsor the respondent Advisory Board considered and screened a total of 19 interested persons, firms or corporations. The criteria adopted for selection were so rigorous that few could come even close to qualifying. They included requirements involving broad experience in development, construction, subdivision of tracts, sale and promotional work, management, financing and the availability of two millions of dollars in quickly realizable funds, $100,000 of which was to accompany the bid of the proposed sponsor.
HIP came through with flying colors, and was accordingly selected as the sponsor. The court finds that all the statutory preliminaries to be observed were performed with meticulous exactness.
(3)
Petitioner complains that the contract entered into by the Town with HIP provides, inter alia, that the latter need install ‘‘ only customary site improvements ’ ’ with ‘ ‘ no requirement for erection of structures or other suitable utilization of the urban renewal area ’ ’. It is true that various sections of the contract do relate to such site improvements without reference to structures or other items, but provision is made in the same contract which obligates the redeveloper (HIP) to make the property suitable to utilization in accordance with the Urban Renewal Plan, which latter instrument looks to the development of the area for industrial and commercial uses. This requirement is contained as well in section 507 of the General Municipal Law, wherein the several obligations of the sponsor to develop the property are spelled out.
Thus, the contract satisfies the guidelines established both by the Constitution and by its by-product, the General Municipal Law.
(4)
The New York State Constitution at section 1 of article XVIII states in pertinent part that: ‘ ‘ the legislature may provide in such manner, by such means and upon such terms and conditions as it may prescribe for * * * the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas ”.
The former sections 72-m to 72-o, inclusive, of the General Municipal Law, were adopted by the Legislature pursuant to the constitutional sanction and have been replaced by the more comprehensive articles 15 and 15-A.
*390 The strong probability — as suggested by petitioner — that HIP will eventually find the enterprise profitable is no bar to the proceeding; for as a private corporation, HIP was presumably organized for profit and not for altruistic purposes. Thus, in Matter of Murray v. La Guardia (291 N. Y. 320, 329-330) the court noted: “Nor do we find merit in the related argument that unconstitutionality results from the fact that in the present case the statute permits the City to exercise the power of eminent domain to accomplish a project, from which Metropolitan — a private corporation — may ultimately reap a profit. If, upon completion of the project the public good is enhanced it does not matter that private interests may be benefited. (Board of Hudson River Regulating Dist. v. Fonda, J. & R. R. R. Co., 249 N. Y. 445, 453.) ”
Petitioner would have the parties (Town and HIP) perform the impossible by setting up a minimum dollar price for the conveyance by Town after the condemnation proceedings have been completed. A moment’s reflection will reveal the imponderables which would defeat such a plan at its inception. For who knows what valué the court will attach to the properties under condemnation? Who can tot up with absolute precision the fees and expenses that must be incurred and disbursed in the course of the proceedings? If a dollars and cents formula were necessary as a prerequisite to such a project, Urban Renewal would die aborning.
Again petitioner returns to the attack by saying that the minimum price — whatever it may be — has no relation to market value and is thus illegal. This is less difficult to rebut, because it is safe to say that the court is expected to set as a price to be paid either the market value in assessing its awards, or a close approximation thereof based on the highest and best use of the premises.
(5)
The returns of the Town, its Planning Board (Commission) and its Advisory Board all establish beyond peradventure of doubt that all open bidding requirements were adhered to faithfully with respect to the advertisements published and the hearings held.
The fault petitioner ascribes to the bidding procedure is that any prospective bidder would face the almost inevitable probability that his bid could be and would be matched by HIP — as called for in the Contract Plan — and that to this extent the sealed bidding requirements were not being met.
*391 In addition to the proof submitted as to the actual advertising for bids the court notes that just about every person, firm or corporation that could have evinced interest in the project had the opportunity to contest with HIP the privilege of becoming the “ qualified and eligible sponsor The fact that no one came forward in response to the spate of advertisements lends verisimilitude to the argument.
In this connection, also, the court finds that as to objection
(6)
the advertising and procurement of bids was conducted in full and strict compliance with applicable law.
(7)
The Town-HIP contract makes ample and abundant provision for payment of all condemnation awards without in any manner pledging the faith and credit of the Town.
Nothing in the Suffolk County Improvement Act (L. 1927, ch. 190, as amd. by L. 1939, ch. 726 and L. 1945, ch. 746) —particularly section 16 thereof ■ — prohibits the consummation of the contract. As it may affect this proceeding that section reads that: ‘ ‘ All damages awarded by the court, with interest thereon from the date of vesting title, and all costs and expenses which may be taxed, shall be paid by the [Town] to the respective owners mentioned or referred to in such final decree * * *
Damages awarded as compensation shall be payable immediately upon the entry of the final decree of the court * Such damages, costs and expenses shall be paid from the fund for acquisition of land for highway purposes provided for in this act # * or such other fund as may be appropriated for such improvement, if the acquisition be for other than highway purposes.”
Here the acquisition is or will be “ for other than highway purposes ”.
The contract provides that on certain definite notice the redeveloper (HIP) will deposit with the Town the moneys necessary to pay the property owners as their lands are acquired and the $100,000 deposit is to be retained by the Town “ as security for the performance of the obligations of the Redeveloper to be performed prior to the return of the deposit to the Redeveloper, or its retention by the Town, as liquidated damages, or its application on account of the purchase price, in accordance with the agreement ’ \
Thus, the Town, without obligating itself financially in the slightest degree, is assured that the contract will be performed.
*392 Sections 150.00 and 151.00 of the Local Finance Law have no application, as contended by petitioner, for they are merely permissive in nature, and are not being availed of by the Town in this urban renewal project. Section 101.00 of the same law — except paragraph 7 of subdivision b thereof, -which permits a town to give or loan “ its credit when authorized to do so by the legislature pursuant to the provisions of article eighteen of the state constitution ’’ — is likewise without application in this proceeding.
Subdivision 1 of article VIII of the Constitution has been dealt with in (1) above, and requires no further elaboration.
In the light of the foregoing remarks, the actions of the Town Board and its agencies, corespondents herein, and of HIP in relation thereto, and all the steps taken in furtherance of the urban renewal project, are confirmed. The proceeding is dismissed, on the merits.
The circumstance that this matter reached the court as an article 78 proceeding (CPLR) with a legislative body as a respondent, is noted. HIP raised the issue as an affirmative defense; the Town, in its answer, elected, by silence, to accept it. Petitioner, having chosen his forum, can scarcely now repudiate his choice.