*In re* SAMUEL T. PRINCIPATO, JR., *et al.,* Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOYCE PRINCIPATO, Respondent-Appellant—(SAMUEL T. PRINCIPATO, Respondent-Appellee).)

Second District   No. 78-20

Opinion filed October 30, 1978.—Rehearing denied December 4, 1978.

GUILD, J., dissenting.

John T. Pacocha, of Lisle, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Edmund P. Bart, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Joyce Principato appeals from orders of the Circuit Court of Du Page County finding her minor children, Samuel Principato, Jr., and Angelina Principato, to be neglected children pursuant to section 2—4(1)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1)(a)). The sole issue before this court on appeal is whether the findings of neglect were contrary to the manifest weight of the evidence. They were.

On November 30, 1976, petitions were filed by the State's Attorney of Du Page County alleging the children were neglected minors whose parents were unable or unwilling to provide "the proper or necessary support, education as required by law, or * * * medical or other remedial care or other care * * * necessary for [their] well-being, or who

[are] abandoned by [their] parents, guardians or custodians * * *." Prior to the adjudicatory hearing of the petitions on September 14, 1977, the Public Defender, who had been appointed as guardian ad litem to represent the two Principato children, for reasons not apparent to us in this record admitted the allegations of the complaint on their behalf. In addition, the attorney for Samuel Principato, Sr., the father of the children and a respondent in this action, told the court Principato wished to stipulate, prior to the adjudicatory hearing, that both children were neglected on November 30, 1976, the date the petitions were filed. When asked by his attorney whether he wished to so stipulate, the respondent father replied:

"It didn't have nothing to do with support. It had to do with I was home alone with the kids.

Mr. Hayton [Samuel Principato, Sr.'s Attorney]: So you'll stipulate that they were neglected?

Mr. Principato: Yes. I was deserted at the time."

The evidence adduced at the hearing was that Joyce Principato and Samuel Principato, Sr., were the natural parents of the minor children, Angelina and Samuel, Jr., who were 4 months and 2½ years old, respectively, when the neglect petitions were filed. During the fall of 1976 the Principatos underwent a very traumatic period in their marriage and in February 1977, after these neglect petitions had been filed and the children placed outside the home, one with each of their grandmothers, they were divorced. Samuel, Sr., testified that Joyce left the home "for days or weeks at a time" sometimes taking Angelina with her. He took care of Sam, Jr., by himself or took his son to stay with his paternal grandmother, Mrs. McCarthy. There was testimony that the family's apartment was dirty, with dishes and garbage piled up and laundry and toys in a disorganized state and that the children sometimes had wet diapers unnecessarily. There was no evidence of any physical abuse of the children by either parent nor was there any testimony suggesting the children were malnourished or deprived of medical care. By all accounts, the children were healthy and happy despite the tension and stress in the home caused by the conflict between their parents and both children spent a considerable amount of time with their grandmothers, who were apparently able and willing to assist the parents whenever necessary.

Samuel Principato, Sr., was permitted to testify extensively regarding the marital conflicts and the frequent absences of Joyce from the home. He testified that she was "running around" with friends of hers of whom he did not approve and that they argued frequently about her poor housekeeping.

A social worker for the Wheaton Police Department, Holbert Watson, testified there had been incidents of physical violence between the parents and that Samuel, Sr., was a martial arts expert. Joyce had

complained to Watson that Sam had been beating her up and threatening her and that he was taking drugs.

Mrs. McCarthy, the paternal grandmother of the Principato children, testified Joyce always told her when she was leaving the apartment and that she often took care of her grandson when Joyce was gone. She stated Joyce told her Sam would not allow her to take the children with her and that she believed Sam would kill her if she tried to do so. Mrs. McCarthy's attorney, who was present in the courtroom during this hearing, asked the court if he might ask one question of his client, who was then testifying. He informed the court he intended to ask her whether Joyce was aware that Sam had killed his first wife. The objection of Sam's attorney was sustained by the trial court. Joyce's counsel similarly asked Sam whether it was true he had spent time in a California penitentiary for the murder of his first wife and an objection was sustained. The court also sustained objection to questions posed to Sam concerning whether he had threatened Joyce with physical harm if she took the children away from him.

Joyce Principato testified that Sam had battered her regularly during the fall of 1976 and that she had awakened several times to find Sam holding "a sword at her throat." When Joyce attempted through her own testimony to show why she left the children with Sam the court precluded such inquiry as irrelevant to the issue of whether the children were neglected during the period immediately prior to the filing of the neglect petitions.

At the conclusion of the hearing the court found "by the admissions of the respondent minors * * * and the natural father and by a clear preponderance of the evidence, * * * there was a lack of proper or necessary support and a lack of care necessary for the support" of both Angelina and Sam, Jr. The court specifically found no abandonment by the parents and no lack of proper education. It made no finding regarding medical care.

Section 2—4(1) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1)) provides, in part, that a neglected minor is one under 18 years of age:

> "(a) who is neglected as to proper or necessary support, education as required by law, or as to medical or other remedial care recognized under State law or other care necessary for his well-being, or who is abandoned by his parents, guardian or custodian * * *."

The trial court found no lack of proper education or abandonment; therefore, we must determine only whether its finding that the Principato children were neglected as to proper or necessary support or other care necessary for their well-being was contrary to the manifest weight of the evidence.

■■ Neglect is not a term of fixed meaning and its meaning necessarily varies with the circumstances of each case. (*In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568.) Cases involving the welfare of children are *sui generis* and must be judged on their particular facts. (*In re Stacey* (1973), 16 Ill. App. 3d 179, 305 N.E.2d 634.) Section 2—4 clearly requires the court to determine whether a child is receiving the care necessary for his well-being and not whether the parents have been neglectful. *In re Gates* (1978), 57 Ill. App. 3d 844, 849, 373 N.E.2d 568, 573.

The trial court based its findings both on the evidence adduced at the hearing and on the admissions of the respondent children (by their guardian ad litem) and respondent father. While we are aware of the practice of attorneys appointed to represent minors with regard to neglect petitions to simply admit the allegations of the petitions, we do not deem this practice to be of assistance to the trial court in the ascertainment of truth. Such an admission, unsupported by facts, is worthy of little weight. The "stipulation" of Samuel Principato, Sr., in this case is likewise of no discernible import. His responses to the questions of his attorney reveal he had no understanding of the meaning of neglect and his motivation for such a stipulation is apparent throughout his testimony. He and his wife, Joyce, had recently undergone a highly emotional divorce and he was at the time of this hearing incarcerated in the county jail. His testimony was not directed toward his personal inability to care for his children in Joyce's absence but was entirely aimed at attacking Joyce as a wife and mother.

■■ As the court said in *Stacey*, "[t]his is not the clear-cut case of neglect that this court has previously faced." (16 Ill. App. 3d 179, 183, 305 N.E.2d 634, 638.) In *Stacey* the evidence was that the home and children were dirty, with bags of garbage piled up in the home and mold on the unwashed dishes and that the children wore unsuitable clothing in cold weather. The reviewing court held the trial court's findings of neglect were against the manifest weight of the evidence. (*In re Stacey* (1973), 16 Ill. App. 3d 179, 184, 305 N.E.2d 634, 638.) Viewing the evidence in this case as a whole we must similarly find the evidence does not support a finding of neglect. The Principato children were apparently healthy, well-fed and loved by their parents and grandparents. While the family apartment may not have been the best kept and the marital disputes of their parents unsettling, evidence of neglect as specified by section 2—4 is lacking.

The judgment of the Circuit Court of Du Page County is reversed.

Reversed.

BOYLE, J., concurs.

Mr. JUSTICE GUILD, dissenting:

I dissent. I feel that the majority has misinterpreted the purpose of the neglect statute (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1)(a)) and the application to the facts of this case.

At the outset I am fully conversant with, and agree without a shadow of a doubt that the natural parent has the superior right to the custody of his or her child. I further recognize that oft times social workers have a tendency to feel that the child in question is better off in a foster home where better creature comforts are available. This is, of course, a fallacy. The love and affection of a parent for his or her child is not measured by what material benefits they may be able to afford for the child. On the other hand, the right of the parent must yield where the facts indicate that the welfare and best interest of the child would be better served.

The majority does not believe that the facts of this case are such as to warrant a finding of neglect under section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—4). I do not agree.

The hearing, both at the adjudicatory stage and at the dispositional stage, seems to have been based primarily upon the recriminations of each parent against the other. That is not the issue herein. It may well be that the father is not an exemplary parent. But there is evidence that the mother did, in fact, neglect the children—the paternal grandmother stating that from the time Sam, Jr., was 15½ months old he was with her 4 or 5 days a week, Sam being 3½ years old at the time of the first hearing herein.

More important is the fact that at the time of the dispositional hearing both parents were in jail!

I do not find that *In re Stacey* (1973), 16 Ill. App. 3d 179, 305 N.E.2d 634, cited by the majority, is controlling. In *Stacey* the events which were the basis of the neglect petition had occurred more than a year and a half before the hearing thereon. In the meantime, the Stacey parents had moved to Zion, Illinois, had established their home there and the children were with them. As pointed out in Stacey, "There is no fixed standard for a determination of neglect, so each case must be determined on its particular facts."

Going further, it is to be noted that the pediatrician advised the court on or about the time of the adjudicatory hearing that the interest of the child, Sam, Jr., would be best served by leaving him with his grandmother who, "For all practical purposes this woman has taken care of Samuel's physical and emotional needs for greater than a year." Likewise, the caseworker for the Department of Children and Family Services recommended that the children remain with their grandparents, observing, "The grandparents could help with a transition back to the parents when there is housing and means of support." The dispositional

hearing was held in October of 1977. The record discloses that as late as December 1977 the mother of the children was living in a rented room. This does not appear to be adequate for the care of two little children.

This is not a case of permanently taking the children from the parents, or either of them. Neglect cases are on-going. I am sure that if the mother secures the proper housing and can demonstrate to the court that she is in a position to care and provide for the children that they will be returned to her in that event. In the meantime, the considerable efforts of all the people who have attempted to assist in this case should not go unappreciated. Nor should we substitute our judgment for that of the court. This is best stated by our supreme court in *In re Stilley* (1977), 66 Ill. 2d 515, 520, 363 N.E.2d 820, 822:

> "Given the varying circumstances of neglect cases, the trial court must have broad discretion to reach a just determination. [Citations.] Only where there has been an abuse of discretion or the judgment has been against the manifest weight of the evidence should the decision be disturbed on appeal. The delicacy and difficulty of child-custody and child-neglect cases justify the burden of responsibility placed on the trial court and the ensuing deference which must be given to the trial court."

I did not find, as the majority did, that the guardian ad litem for the children "* * * admitted the allegations of the complaint on their behalf." The trial court so found, and the majority adopted that finding, but the record does not indicate that the guardian ad litem admitted anything. As a matter of fact the guardian ad litem attempted to place the decision up to the court, stating in part, "* * * I would merely demand that the court's decision require full proof of all of the allegations made by the State's Attorney * * *." At this point the trial court erroneously stated, "Are you aware that your clients admitted the petition early in this case?" The record does not so indicate.

Under the facts of this case I agree with the trial court that the children were neglected and I would affirm the finding, again noting that the proper procedure in a change of circumstances of the mother, or the father for that matter, is a continuing matter for the trial court to consider.