552

*In re* J.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. William McCarron, Respondent-Appellant).

Second District No. 2—87—0418

Opinion filed June 13, 1988.

William J. McCarron, of De Kalb, appellant *pro se.*

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Peter J. Dockery, Public Defender, of Wheaton, for J.M.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, the minor's father, appeals *pro se* from the trial court's order adjudicating his 16-year-old daughter, J.M., a minor requiring authoritative intervention (MRAI) (Ill. Rev. Stat. 1985, ch. 37, par. 702—3). We dismissed his prior appeal of this same order for the reason it was neither an appeal from a final judgment nor a proper interlocutory appeal, and the cause was remanded for a dispositional hearing. (*In re J.M.* (1987), 151 Ill. App. 3d 1037.) On remand at the dispositional hearing, the trial court determined it was in the best interests of J.M. to be made a ward of the court, placed her under supervision for a one-year period, until April 8, 1988, and released her to the continued care and custody of her foster parents, the Redmonds. Respondent then brought the instant appeal.

He contends (1) section 2—3 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—3) (the MRAI statute) is unconstitutional; (2) he was deprived of due process at the dispositional hearing; (3) the adjudication of J.M. as an MRAI was against the manifest weight of the evidence; and (4) the MRAI statute does not further the basic purpose of the Juvenile Court Act.

■■ In the introduction to its brief, the State asserts respondent's appeal will be moot as of October 8, 1987, the date of J.M.'s eighteenth birthday, with the possible exception of respondent's argument that the MRAI statute is unconstitutional because it subjects him to liability for payment for the minor's placement without due process of law. Accordingly, the State expressly reserved to itself "the right to move to dismiss certain portions of the instant appeal once [J.M.] has attained the age of majority." The State has not so moved, however, and we do not find the instant appeal moot.

A cause is considered moot on appeal if the decision of the reviewing court could have no practical effect on the parties. (*Bunge Corp. v. Lewis* (1986), 146 Ill. App. 3d 1094.) Although it is true the MRAI statute does not apply to persons over 18 years of age (Ill. Rev. Stat. 1985, ch. 37, par. 702—3), wardship and custodianship may continue until the age of 21 (Ill. Rev. Stat. 1985, ch. 37, pars. 705—7(6), 705—11; see also *In re J.J.* (1979), 71 Ill. App. 3d 227). Hence, we proceed to consider the merits of the appeal.

■ At the outset, we note that *pro se* litigants are held to comply with the same rules of procedure required of attorneys. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 451.) We further note respondent's brief contains an inadequate appendix in violation of Supreme Court Rule 342, citations to specific page numbers and the official reports are not provided in all instances, the statute at issue is neither set forth verbatim nor in the appendix, the argument sections do not contain citations to pages of the record relied on, and the last two issues argued are unsupported by any citation to relevant authority, all in violation of Supreme Court Rule 341. 107 Ill. 2d Rules 342(a), 341(d), (e)(5), (e)(7).

Although failure to comply with supreme court rules governing briefs can operate as a waiver or can warrant dismissal of the appeal (*Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42), the impropriety of respondent's brief is no limitation on our jurisdiction (*Miller v. Miller* (1988), 167 Ill. App. 3d 176, 177), and we shall consider respondent's arguments to the extent they are properly presented. See *Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1092.

■ Respondent contends the MRAI statute is unconstitutional in several respects. First, he asserts it is vague and without standards in that the terms "absent from home" and "beyond the control" are not defined. Respondent, citing *Connally v. General Construction Co.* (1925), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127, states that an unconstitutionally vague statute is one which is written in terms so vague that men of common intelligence must guess at its meaning and differ as to its application. Thus, he finds the MRAI statute vague inasmuch as the language does not require habituality or repeated conduct, no limitation is placed upon time and duration, and there is no indication given as to the seriousness of the behavior which can invoke application of the statute.

The State argues the statute is not unconstitutionally vague as exemplified by a complete reading of all the provisions of the statute and by reference to the manner in which the statute and its predeces-

sor statute (minor otherwise in need of supervision [MINS] (Ill. Rev. Stat. 1981, ch. 37, par. 702—3)) have been interpreted and applied in past cases. Further, the State points to the legislative history of the statute, which makes it clear that it is not intended to apply to the child or teenager who merely acts like a child or teenager in the ordinary and contemporary sense of those terms. It argues the lack of rigid definition is necessary for flexibility in application of the statute to cases which are *sui generis* and in which the best interests of the child are paramount.

There is a strong presumption that legislative enactments are constitutional, and the person who asserts otherwise has the burden of clearly establishing the constitutional violation. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227.) To succeed in a facial challenge to a law on grounds of vagueness, it must be demonstrated that the law is impermissibly vague in all of its applications. (*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193; *People v. Matkovick* (1984), 101 Ill. 2d 268, 275.) A statute is unconstitutionally vague if its terms are so indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application. (*Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 1057; *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1986), 144 Ill. App. 3d 325, 331.) "To hold a statute unconstitutionally vague, its terms must be so ill-defined that their meaning will be determined by the opinions and whims of the trier of fact rather than by any objective criteria. [Citations.]" *Rackow*, 152 Ill. App. 3d at 1057.

It is not necessary that each term used in a statute be specifically defined and that exact application of the statute to all actual variations be delineated therein. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 269; *Forsberg v. City of Chicago* (1986), 151 Ill. App. 3d 354, 362.) Absent a contrary legislative intent, the words used in a statute have their ordinary and popularly understood meaning. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) Words of common usage may acquire a special and limited significance in the context in which they are used. (*People ex rel. Adamowski v. Chicago Land Clearance Comm'n* (1958), 14 Ill. 2d 74, 82.) "A statute satisfies the requirement of certainty if the words and phrases employed have a technical or other special meaning sufficiently well known to enable those within their reach to apply them. [Citation.]" (*Adamowski*, 14 Ill. 2d at 82.) In determining whether a statute is unconstitutionally vague, in addition to the language used, consideration is also given to the legislative

objective and the evil the statute is designed to remedy. *La Pointe*, 88 Ill. 2d at 499.

■■ We find respondent has not met his burden of establishing the MRAI statute is unconstitutional. The statute provides as follows:

"Those requiring authoritative intervention include any minor under 18 years of age (1) who is (a) absent from home without consent of parent, guardian or custodian, or (b) beyond the control of his or her parent, guardian or custodian, in circumstances which constitute a substantial or immediate danger to the minor's physical safety; and (2) who, after being taken into limited custody for the period provided for in this Section and offered interim crisis intervention services, where available, refuses to return home after the minor and his or her parent, guardian or custodian cannot agree to an arrangement for an alternative voluntary residential placement or to the continuation of such placement. Any minor taken into limited custody for the reasons specified in this Section may not be adjudicated a minor requiring authoritative intervention until the following number of days have elapsed from his or her having been taken into limited custody: 21 days for the first instance of being taken into limited custody and 5 days for the second, third, or fourth instances of being taken into limited custody. For the fifth or any subsequent instance of being taken into limited custody for the reasons specified in this Section, the minor may be adjudicated as requiring authoritative intervention without any specified period of time expiring after his or her being taken into limited custody, without the minor's being offered interim crisis intervention services, and without the minor's being afforded an opportunity to agree to an arrangement for an alternative voluntary residential placement. Notwithstanding any other provision of this Section, for the first instance in which a minor is taken into limited custody where one year has elapsed from the last instance of his having been taken into limited custody, the minor may not be adjudicated a minor requiring authoritative intervention until 21 days have passed since being taken into limited custody." Ill. Rev. Stat. 1985, ch. 37, par. 702—3.

Respondent likens the instant statute to the one found unconstitutional in *People ex rel. O'Connell v. Turner* (1870), 55 Ill. 280, and asserts that, as in *O'Connell*, "there is not a child in Illinois who could not be proved by [two] or more witnesses to be 'absent from home' or 'beyond the control' of his parents."

In *O'Connell*, the court struck down a statute that provided for the confinement and reformation of minors who are "destitute of proper parental care, and growing up in mendicancy, ignorance, idleness or vice." (*O'Connell*, 55 Ill. at 282.) The court opined that no two of the "best and kindest parents" could scarcely agree on what is proper parental care and, thus, that any child in the land could be proved by two or more witnesses to be destitute of same.

A most obvious distinction between the law at issue in *O'Connell* and the one here is that confinement of a minor found to require authoritative intervention is not a possible disposition. (Ill. Rev. Stat. 1985, ch. 37, par. 705—2(b).) Further, as the State points out, the scope of the phrase "absent from home" is narrowed considerably in that the absence must be "without the consent of parent, guardian, or custodian."

Respondent's contention that the statute can apply to a child who disobeys a mother's warning and thereby places himself in danger, or to a child who ditches school once on a dare, or to a child who sneaks out to a forbidden movie is without merit. As stated in *In re Polovchak* (1983), 97 Ill. 2d 212, 225, "it seems manifest that the legislature could not have intended [the] phrase ['beyond the control' of one's parents as used in the predecessor MINS statute] to include an isolated act by a *** minor which poses no hazard to him or anyone else." By the same token, a single isolated act by a minor in Illinois can be sufficient to establish that the minor is beyond the control of his parents provided the minor's conduct is seriously harmful and points to grave danger. (*In re Polovchak* (1981), 104 Ill. App. 3d 203, 210.) Moreover, neither absence without consent nor being beyond the control of one's parents, by itself, is sufficient to confer jurisdiction under the act upon any court (except as otherwise provided in sections 3—3 and 3—9 of the Act) "until efforts and procedures to address and resolve such actions *** have been exhausted without correcting such actions." Ill. Rev. Stat. 1985, ch. 37, par. 701—19(b).

As noted in *Polovchak*, prior decisions of that court concerning minors otherwise in need of supervision demonstrate that the initial determination of the need for supervision was predicated on the fact that the minor was incorrigible, a frequent runaway, or that the minor's acts posed serious hazards to himself or to others. (*In re Polovchak*, 97 Ill. 2d at 225; see, *e.g.*, *In re R.R.* (1982), 92 Ill. 2d 423 (minor tried to poison her mother and was beyond her parents' control); *In re Baker* (1978), 71 Ill. 2d 480 (minor repeatedly ran away from home); *In re Sekeres* (1971), 48 Ill. 2d 431 (minor frequently absented herself from home).) Thus, it is not adequate to prove a minor is ab-

sent from home or beyond his parents control without also proving the minor's circumstances constitute a substantial or immediate danger to the minor's physical safety.

Because the statutory language between subsections (1) and (2) of section 2—3 is conjunctive, a juvenile court may assume jurisdiction of a minor under this section only after (1) a law enforcement officer has taken limited custody of the minor, (2) the minor has been offered interim crisis services during the following 21 days, (3) the minor refuses to return home and (4) the minor and his or her parent, guardian or custodian failed to agree on continued placement or an alternative voluntary residential program. Ill. Rev. Stat. 1985, ch. 37, pars. 702—3(1), (2), 701—19(b).

As the State asserts, it is clear from the legislative history of the MRAI statute that it is not intended to apply to the child or teenager who merely acts like the stereotypical child or teenager. According to proceedings in the House of Representatives:

"[Representative Grossi] 'Basically, the Bill [the MRAI statute] has one simple idea. That idea is that children, who have not broken any laws, should not be treated in the same fashion as children that have. Basically, the Bill provides that those individual children who have problems adjusting to their home environment, who have problems attending school; in other words, children that have not broken any laws will not be treated in juvenile court but rather, they will be referred directly and immediately to social service agencies.' " 82d Ill. Gen. Assem., House Proceedings, April 22, 1982, at 124.

In later proceedings, Representative Grossi answered a question regarding whether there was a difference between a "minor requiring authoritative intervention" and the former category of "minor otherwise in need of supervision":

"[Representative Grossi]: 'My understanding [is] that it is simply a change in the description of these types of minors.'

[Representative Kulas]: 'There is no difference, as far as factual difference? Is it just a name change, in other words?'

[Representative Grossi]: 'What is described [is] the same type of behavior, instead of identifying them as minors in need of supervision, they are now known as minors in need of authoritative intervention, and there's the addition of twenty-one days before they are brought before the court.' " 82d Ill. Gen Assem., House Proceedings, June 25, 1982, at 158.

Thus, it is clear that minors to whom the MRAI statute would be applicable are those whose behavior is the same type of behavior

which was found to require supervision under the MINS statute (Ill. Rev. Stat. 1981, ch. 37, par. 702—3), *i.e.*, as noted above in *Polovchak*, supervision was predicated on the fact the minor was incorrigible, a frequent runaway, or that the minor's acts posed serious hazards to himself or to others. *Polovchak*, 97 Ill. 2d at 225.

Moreover, it is neither possible nor desirable for the statute to strictly define the terms "absent from home" or "beyond the control." Cases involving the welfare of a child are *sui generis* and must be decided in accordance with the particular facts of each individual and varying situations. (*In re Gates* (1978), 57 Ill. App. 3d 844, 849; *In re Grant* (1975), 29 Ill. App. 3d 731, 736.) Contrary to respondent's contention, the MRAI statute does not elevate the desires of a child over those of his or her parents without any safeguards to protect the parents' interests. The State as *parens patriae* will step in pursuant to the requirements of the statute only when the time-honored parental interest in the minor's society and custody has been so thoroughly thwarted by the minor's behavior that the minor's physical safety is in substantial and immediate danger. In sum, we do not find the statute is unconstitutional on the ground of vagueness.

■ Respondent also contends the MRAI statute is unconstitutional in that it requires no finding of parental unfitness prior to permitting State intervention in the family unit. Citing *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, he contends the State cannot substitute its judgment for that of the parents if the parents have done nothing to disqualify themselves, and it is only when parents have seriously threatened the welfare of the child or where the child has threatened the safety and protection of the public that the State, on the basis of a compelling interest, may interfere with the fundamental right of parents in the custody and care of their child.

In *Stanley*, the court stated that it had frequently emphasized the importance of the family: the rights to conceive and to raise one's children have been deemed " 'essential' [citations], 'basic civil rights of man' [citation] and '[r]ights far more precious *** than property rights' [citation]." (405 U.S. at 651, 31 L. Ed. 2d at 558, 92 S. Ct. at 1212.) The court in *Stanley* also noted that the integrity of the family unit has found protection in the due process and equal protection clauses of the fourteenth amendment and in the ninth amendment. (405 U.S. at 651, 31 L. Ed. 2d at 559, 92 S. Ct. at 1212; U.S. Const., amends. XIV, IX.) A natural parent's right to the custody of his child is not absolute, however, and that right must yield to the welfare and best interests of the child. (*Prince v. Commonwealth of Massachusetts*

(1944), 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438; *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556.) Thus, contrary to respondent's assertion above, the State may interfere in a parent's fundamental right to the custody of his child when either the child's welfare or the safety or protection of the public cannot adequately be safeguarded without the removal of the child from parental custody. (See Ill. Rev. Stat. 1985, ch. 37, par. 701—2(1).) This policy applies to all the proceedings under the Juvenile Court Act. Ill. Rev. Stat. 1985, ch. 37, par. 701—2(3)(c).

The focus in a proceeding under the MRAI statute is not any misconduct, failing or disability of the parent toward the minor as would be the case in neglect or dependency proceedings. (Ill. Rev. Stat. 1985, ch. 37, pars. 702—4, 702—5.) Rather, the focus is on the behavior of the minor which places the minor outside the protection of parental custody and which causes the minor to be in substantial and immediate danger of physical harm. The welfare of the minor is in jeopardy as a consequence of the minor's own behavior, not that of the parents. Although custody of the minor may be changed after a finding that he or she requires authoritative intervention, termination of parental rights after only an MRAI finding is not a possible dispositional order. (Ill. Rev. Stat. 1985, ch. 37, par. 705—2(1)(b).) Accordingly, we conclude the MRAI statute is not unconstitutional for not requiring a finding of parental unfitness.

■ Respondent also contends the fact the minor can unilaterally refuse to return home and refuse proposed alternative placement, thus subjecting the minor's parents to liability for support expenses of the minor incurred in connection therewith, renders the MRAI statute unconstitutional because it amounts to a State-sanctioned taking of his private property without due process safeguards.

The State argues respondent does not have standing to raise this issue or, alternatively, that he waived the issue by failing to challenge section 7—4 of the Act at trial. That section provides authority for the enforcement of financial liability against parents and others liable under the law for support of the minor. (Ill. Rev. Stat. 1985, ch. 37, par. 707—4.) On the merits, the State asserts respondent's due process rights are not compromised by application of the statute.

We find respondent does have standing despite the fact that thus far the County of Du Page has incurred the expense of the minor's placement, and enforcement proceedings against the respondent pursuant to section 7—4 have not yet begun. A person has standing to challenge the validity of a statute if he or she has sustained, or is in the immediate danger of sustaining, some direct injury as a result of

enforcement of the statute. (*People v. Esposito* (1988), 121 Ill. 2d 491, 512; *People v. Ziltz* (1983), 98 Ill. 2d 38, 41.) The fact enforcement proceedings have not yet been instituted does not affect the "immediacy" of respondent's danger; he clearly is subject to the provisions of the statute and enforcement could be instituted at any time. (*Cf. People v. Mayberry* (1976), 63 Ill. 2d 1 (where the court found the defendants, charged, respectively, with delivery of more than the minimum of a "substance containing" cannabis and "substances containing" controlled substances, had standing to challenge the constitutionality of the related penalty provisions even though they had not yet been convicted).) Further, although it is true that respondent did not specifically challenge section 7—4 at trial, he would not be subject to the provisions of that statute were it not for the operation of the MRAI statute, which he did challenge at trial. Accordingly, we find respondent has standing and has not waived the issue.

■ On the merits, however, we agree with the State that defendant's right to due process is not offended by the statute. It is clear that it is the basic responsibility of the parent to provide for the support of his or her child. (*In re Nelsen* (1977), 54 Ill. App. 3d 412, 415.) It is also clear from the language of the statute that the liability of the parent to pay "a reasonable sum from time to time for the care, support and necessary special care or treatment of the minor" is dependent upon it appearing "at any hearing that [the] parent *** is able to contribute to [the minor's] support." (Ill. Rev. Stat. 1985, ch. 37, par. 707—4(1).) Moreover, as the State points out, the record shows respondent was aware of his potential financial responsibility as early as the shelter care hearing held in December 1985, and he appeared at all subsequent substantive hearings regarding J.M.'s placement. The record further shows the probation department was ordered to explore family placements or resources three months before the adjudicatory hearing was held.

Respondent vigorously argues in reply that all suggested alternative placements were "unilaterally" vetoed by the minor, thus elevating the rights of the minor child over the parent and subjecting the parent to financial obligation regardless of available family alternative placement.

It is true J.M. rejected several alternative family placements: with her grandmother Grace, her Aunt Lucy, and her Uncle John. She also refused placement at Mooseheart. As to her grandmother and aunt, J.M. testified she felt respondent would still "have control of the situation," and she did not feel those placements would be stable enough for her. J.M. testified her sister had lived with Aunt Lucy, and her sis-

ter said it was not like a real home and there was no real warmth. J.M. was not asked why she would refuse placement with her Uncle John. As to Mooseheart, where she had been placed when she was very young, she felt they were abusive, and she felt respondent would also have control of the situation. A common thread—respondent's control—is evident in each instance.

Although J.M.'s rejection of these alternative placements was "unilateral," as termed by respondent, it is obvious that if there is no agreement by the minor to the proposed placement, the behavior which brought the minor to the attention of the court system simply will continue. Thus, respondent's asserted "elevation" of the rights of the minor child over the parent is nothing more than practical acknowledgment of what is necessary to begin the intervention process. This acknowledgement comports with the stated purpose and policy of the Juvenile Court Act that "[t]he parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child" (Ill. Rev. Stat. 1985, ch. 37, par. 701—2(3)(c)), and "[e]very child has a right to services necessary to his proper development, including health, education and social services" (Ill. Rev. Stat. 1985, ch. 37 par. 701—2(3)(b)).

In sum, we find respondent has failed to establish that the MRAI is unconstitutional on any of the grounds he asserts.

Respondent next contends he was denied due process at the dispositional hearing. He argues he did not receive the statutory notice required, he was not afforded a "fair opportunity to controvert" the contents of the social history report, and he was denied his right to have counsel present. He requests the court's dispositional order be set aside.

■ The basic requirements of procedural due process are notice and an opportunity to be heard and defend in an orderly proceeding adapted to the nature of the case. (*Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302, 308.) The standard for determining what due process requires in any juvenile proceeding is fundamental fairness (*In re S.K.* (1985), 137 Ill. App. 3d 1065, 1070); in a juvenile proceeding, adequate notice to the minor and his parents is a requirement of due process (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *In re J.P.J.* (1985), 109 Ill. 2d 129, 135).

Section 5—1(2) of the Act requires that "[n]otice in compliance with Sections 4—3 and 4—4 must be given to all parties-respondents prior to proceeding to a dispositional hearing." (Ill. Rev. Stat. 1985, ch. 38, pars. 705—1(2), 704—3 and 704—4.) "The regular return receipt for certified mail is sufficient proof of service." (Ill. Rev. Stat.

1985, ch. 37, par. 704—4(1).) The method of notice appropriate to a particular respondent depends heavily on the State's ability to identify and locate that person; only service by publication is excused under certain conditions, and if personal or abode service or service by certified mail is possible, the statute requires it. *In re J.P.J.*, 109 Ill. 2d at 135.

■ Here, service by certified mail was attempted twice, once on March 13, to respondent's De Kalb address, returned unclaimed, and once on March 31 to respondent's Lisle address, no return at all. Respondent testified he was never notified that the date for the dispositional hearing had been set. He further testified he was told there was a "status hearing" set for the 27th (of March). When he called the clerk's office:

> "They told me it was the 10th of April, so I came here for a status hearing. And I'm being hit between the eyes with a dispositional. I'm not prepared for it. I would have made a motion for perhaps somemore [*sic*] evaluation at that time."

The State maintains respondent received adequate notice of the dispositional hearing where he appeared in person at the hearing and where the service was twice attempted via certified mail. Conceding this does not comport with the service required by section 4—4(1) of the Act (see *In re G.L.* (1985), 133 Ill. App. 3d 1048, 1052 (State's failure to give notice of dispositional hearing to minor's father was erroneous, and State's argument that father had actual notice was jurisdictionally insignificant)), the State submits the statute does not demand "useless formalities," citing *In re J.W.* (1981), 87 Ill. 2d 56.

The mother of the illegitimate minor in *In re J.W.*, however, who had not been formally served as required by statute, appeared in court and participated actively in the proceedings without objection. Respondent here strongly objected to the proceeding at the start because he had received no notice that it was to be more than a status hearing. The right to procedural due process includes a reasonable opportunity to know what the hearing is about and what its possible consequences are. (*In re Estate of Levin* (1985), 135 Ill. App. 3d 866, 870.) "The test is whether an interested party can anticipate the possible effects and orders of the hearing." (*Levin*, 135 Ill. App. 3d at 870.) This test was not met here.

As respondent correctly points out in reply, State intervention that significantly undercuts a parent's fundamental liberty interest in free personal choice in matters involving family life or which has a divisive impact on family relations requires strict adherence to the requirements of procedural due process. (*Polovchak v. Meese* (7th Cir.

1985), 774 F.2d 731, 734.) We conclude the lack of notice to respondent as required by section 5—1(2) of the Act deprived him of due process.

Although the State argues respondent was not prejudiced by his lack of knowledge of the dispositional nature of the hearing, the record indicates respondent would have prepared differently for the hearing had he known its import, and section 1—20 of the Act gives parties the right, *inter alia*, "to present evidence material to the proceedings." Ill. Rev. Stat. 1985, ch. 37, par. 701—20(1).

Respondent also contends he was not afforded "a fair opportunity" to controvert the social history investigation report as provided by section 5—1(2) of the Act. (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(2).) The record shows the court asked respondent to point out the inaccuracies which respondent assertedly noted in the report, but respondent declined on the basis he "just [had] not had time to do an adequate job of getting into any inaccuracies." Respondent received the report only about 10 minutes before he was asked to comment. However, despite the court's apparent willingness to listen, respondent declined to point out even one of the "many inaccuracies and outright falsehoods" which he noticed therein. It has been stated that due process is not denied where a party fails to avail himself of the opportunity to be heard after it is offered to him. *In re E.L.* (1987), 152 Ill. App. 3d 25, 33.

As the State points out, section 5—1(2) of the Act requires only that the court *advise* the parties of the factual contents and conclusions of the reports prepared for the use of the court; the reports need not be submitted for inspection *except* to the attorneys for the parties. (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(2).) Contrary to the State's argument, this is the "exception" to the rights of the parties to the proceedings which are otherwise provided in section 1—20 of the Act, to wit:

> "*Except as provided in* \*\*\* *paragraph (2) of Section 5—1* [*Ill. Rev. Stat. 1985, ch. 37, par. 705—1(2)*] \*\*\* parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, *to examine pertinent court files and records* and \*\*\* the right to be represented by counsel." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 37, par. 701—20.

The State's argument is that this language means the rights of parties provided in section 1—20 of the Act are "less expansive" at the dispositional hearing and that respondent would not have been allowed to call witnesses in order to controvert the report. Such a con-

struction of section 1—20 of the Act is unsupportable, however, in light of the other provisions of section 5—1 of the Act, which refer to adjournment of the dispositional hearing for a reasonable period on the motion, *inter alia*, of a parent "to receive reports or other evidence." (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(4).) Moreover, "[a]ll evidence helpful in determining [the] questions [of whether the minor should be made a ward of the court and the proper disposition best serving the interests of the minor and the public], including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(1).) The fact that respondent did not request a continuance to present evidence may well have been due to the fact he appeared without counsel and was not aware of his right to request a continuance.

Although we believe respondent was afforded a fair opportunity to controvert the factual accuracy of the social history investigation report, lack of the required notice that the hearing was a dispositional one deprived respondent of the opportunity to effectively controvert the report's conclusion and recommended disposition by presenting evidence relevant to the court's determination of wardship and proper disposition.

■■■ Respondent contends also that he was deprived of his due process right to counsel at the dispositional hearing. Counsel was appointed to, and did, represent respondent up to and through the adjudicatory hearing. Afterward, respondent prematurely appealed the court's ruling *pro se* (*In re J.M.* (1987), 151 Ill. App. 3d 1037 (appeal dismissed)), and respondent's appointed counsel filed a motion to withdraw. Counsel was not appointed to represent respondent in the appeal. There is no evidence in the record that counsel's motion to withdraw was allowed and, consequently, counsel remained appointed to represent respondent in the proceedings.

The State argues respondent waived counsel by failing to notify counsel of the hearing and by appearing at the hearing *pro se*. We disagree. As respondent testified, he believed the hearing was simply a status check. Although the court stated to respondent—"Mr. McCarron, I think you better get your attorney here"—the court nonetheless proceeded immediately to consider the social history investigation report and enter its judgment as to wardship and disposition, despite respondent's assertions that his appointed counsel "has not showed up or had contact with [him] in almost a year" and that counsel "doesn't even know of the hearing." The record shows respondent

was not present at the July 18, 1986, hearing when his appointed counsel filed the motion to withdraw, and it shows respondent was not notified of presentation of counsel's motion for leave to withdraw as required by Supreme Court Rule 13; that is, by personal service or certified mail. (107 Ill. 2d R. 13(c)(2).) Moreover, the record does not show notice of the dispositional hearing was sent to counsel. See 107 Ill. 2d R. 11 (requiring service of notices other than process and complaint be made on attorneys of record).

We agree with the State that the waiver-of-counsel rules applicable in criminal proceedings do not apply here. (107 Ill. 2d R. 401.) However, although parties either expressly or impliedly (*Sexton v. Smith* (1986), 112 Ill. 2d 187) may waive statutory rights enacted for their benefit (*Meyer v. Meyer* (1948), 333 Ill. App. 450), waiver requires a demonstrated intentional relinquishment of a known right (*Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520), and in order to establish an implied waiver, there must be a clear, unequivocal and decisive act of the party showing such a purpose. (*Washburn v. Union National Bank & Trust Co.* (1986), 151 Ill. App. 3d 21.) Under the circumstances shown by the record here, we conclude respondent did not waive his right to have counsel present at the dispositional hearing.

In sum, for the reasons stated above, we reverse the court's dispositional order. Cognizant of the juvenile court's continuing jurisdiction until entry of a final discharge order or the minor attains the age of 21 (Ill. Rev. Stat. 1985, ch. 37, par. 705—11; *In re G.L.* (1985), 133 Ill. App. 3d 1048, 1052; *In re D.M.* (1985), 131 Ill. App. 3d 962, 964), we remand the cause for a new dispositional hearing.

Respondent's next contention is that the adjudication finding J.M. to be an MRAI was against the manifest weight of the evidence. He points out the focus of the shelter care hearing and the adjudicatory hearing was J.M.'s refusal to return home following her release from Forest Hospital, where she was placed by respondent in response to a deterioration in her behavior and school attendance. J.M. was extremely angry with respondent for placing her there, and her refusal to return home ultimately precipitated the filing of the MRAI petition. Respondent contends his control of his daughter was evidenced by his placement of her in Forest Hospital and argues there is nothing in the record to suggest he would have failed to retain this control if J.M. had been released into his or another family member's custody.

Respondent's argument is presented without citation either to relevant authority or to the record in violation of Supreme Court Rule 341 (107 Ill. 2d R. 341(e)(7)), and it may be considered waived. (*Gluth*

*Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 25.) Inasmuch as the MRAI finding is essential to the court's disposition on remand, however, we proceed to consider the merits of the issue.

■■■ There is no question that the standard of proof applicable to the instant adjudicatory hearing was a preponderance of the evidence. (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(1).) Each case is *sui generis* (*In re Principato* (1978), 65 Ill. App. 3d 706), and the trial court's decision may only be overturned where the judgment is against the manifest weight of the evidence. (*In re Polovchak* (1983), 97 Ill. 2d 212, 224; *In re Stilley* (1977), 66 Ill. 2d 515, 520.) A judgment is "against the manifest weight of the evidence" when an opposite conclusion is clearly apparent (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 794), or when the finding of the trier of fact is unreasonable, arbitrary, and not based on the evidence (*Roth v. Lissner Iron & Metal Co.* (1967), 88 Ill. App. 2d 352, 355-56). When considering whether a judgment was contrary to the manifest weight of the evidence, a reviewing court must review the evidence in the light most favorable to the appellee. *Steinberg v. Petta* (1985), 139 Ill. App. 3d 503, 508.

■■■ We agree with the State that the court's judgment that J.M. was an MRAI was not against the manifest weight of the evidence. As the State argues, evidence presented at the adjudicatory hearing shows J.M. was "absent from home without the consent" of the respondent.

The bill of particulars indicates that J.M. was absent from home without the consent of her parent "from on or about the date of November 18, 1985, to the date on or about December 10, 1985." Prior to November 18, J.M. was hospitalized by the respondent at Forest Hospital. Upon her release on November 18, J.M. refused to go with respondent's mother and aunt whom respondent sent to pick her up. Since those women were not J.M.'s legal guardians, the hospital would not release J.M. into their custody, and it took J.M. instead to the Lisle police department. During the ensuing three weeks, respondent would not consent to foster care placement, and he admitted that he and J.M. had not been able to agree to any alternative living situation as of the time of the adjudicatory hearing. Respondent also stated that after J.M.'s release from Forest Hospital he asked her to come home, and she refused. Based on the foregoing, it is evident J.M. was absent from home without respondent's consent.

Other testimony at the adjudicatory hearing indicated that J.M. was absent from home without respondent's consent even before she

was admitted to Forest Hospital. J.M. testified she stayed out all night without her father's permission and ran away a lot. Respondent denied he previously stated that J.M. was staying overnight with other kids and that he tried to get her to stop this, but he was impeached with his earlier testimony given at the shelter care hearing.

There was also ample evidence at the adjudicatory hearing that J.M. was beyond the control of respondent. *Inter alia*, the bill of particulars specified J.M. was beyond the control of respondent on numerous occasions in that she kicked in the lock of the door of their Lisle, Illinois, apartment, she stayed out overnight on several occasions without respondent's consent, she used marijuana on several occasions and she refused to attend school and/or she returned to the apartment during school hours without respondent's consent.

The State's evidence at the adjudicatory hearing supported these allegations. Dr. Robert Eme, a clinical psychologist at Forest Hospital, testified J.M. admitted that she used drugs. The doctor testified respondent told him he wanted J.M. to do well in school, stay off drugs, and not run around. The doctor also testified J.M. and her father's relationship was conflictual and belligerent during the counselling sessions.

Dr. Bernard Newman, a psychiatrist at Forest Hospital, testified respondent told him at the intake session that J.M. was out of control, he felt J.M. was using drugs, that she was not attending school, and that she was acting out sexually. Respondent denied he made these statements, testifying that Dr. Newman did not interview him during J.M.'s intake interview at Forest Hospital. Dr. Newman stated J.M. indicated she did not trust her father and she absolutely refused to return home with him. Steve Stone, the director of Naperville Community Outreach, a youth services center, testified respondent originally contacted him in February 1985. Stone stated respondent described to him at that time "a picture of a daughter who was out of control—she was out of the home, she was out of school." Stone also testified J.M. told him of approximately 20 occasions when she was out of the home; these occasions apparently occurred while J.M. was staying with either one of her parents or an uncle. Stone reported that J.M. stopped going to school in January 1985. J.M. also reported to him there had been physical fights at her home and that she "was locked out most of the time."

J.M. testified next. She indicated she ran away a lot, stayed out all night, got drunk "a lot," smoked pot and quit school. She did not have her father's permission to stay out, drink, or smoke pot. She testified she was struck in the face twice by her father during 1985 and

was afraid to go home because she felt she would be physically abused by her father and also because it was not a stable home. J.M. testified that prior to her hospitalization at Forest, her father was unable to control her behavior.

Respondent testified J.M.'s school attendance became irregular sometime in 1984. J.M. was ultimately dismissed from school. Respondent admitted that there was little he could do about J.M.'s truancy because he was not home during the day. Respondent remembered only one occasion when J.M. stayed out all night. Respondent stated that there was an occasion when J.M. "pried open" the bedroom door at their Lisle apartment, and he recalled two occasions when he suspected J.M. of using alcohol.

We conclude the evidence presented at the adjudicatory hearing was sufficient to establish by a preponderance of the evidence that J.M. was absent from home without parental consent and was beyond the control of respondent in circumstances which constituted a substantial or immediate danger to her physical safety. Accordingly, the court's order adjudicating J.M. an MRAI is affirmed.

■■ Respondent's final contention that the MRAI statute "fails to further the basic purpose of the Juvenile Justice Act" because it allows alternate placement "without investigating the adequacy of alternative family placement" and "places far too much uncurbed power in the hands of [the] minor" is barely more than these assertions, unsupported by any citation to authority whatever. We find it is waived for that reason (107 Ill. 2d R. 341(e)(7)), and for the reason that this particular challenge to the statute was not raised in the trial court. *People v. Coleman* (1983), 120 Ill. App. 3d 851.

For the reasons expressed above, the judgment of the circuit court of Du Page County finding J.M. to be an MRAI is affirmed. The court's dispositional order is reversed, and the cause remanded for further proceedings.

Judgment affirmed in part; reversed in part and remanded.

INGLIS and WOODWARD, JJ., concur.