186 Ill. App.3d 386 (1989)
542 N.E.2d 487
In re A.D.R., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Lloyd Rankin, Respondent-Appellant).
No. 4-88-0407.
Illinois Appellate Court  Fourth District.
Opinion filed July 27, 1989.
*387 Diana Lenik, of Urbana, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Order affirmed.
JUSTICE KNECHT delivered the opinion of the court:
Lloyd Rankin appeals from the order of the circuit court of Champaign County which found his minor daughter, A.D.R., neglected pursuant to section 2-3 of the Juvenile Court Act of 1987 (Act of 1987) (Ill. Rev. Stat. 1987, ch. 37, par. 802-3). The sole issue before this court is whether the trial court's finding was against the manifest weight of the evidence. It was not.
On April 4, 1988, the State filed a two-count petition for wardship in the circuit court of Champaign County which alleged A.D.R., the only child of Lloyd and Rhonda Rankin, was a neglected and abused minor. Count I alleged neglect due to an environment injurious to the minor's welfare when she resides with her mother and father. Count II alleged abuse due to a substantial risk of physical injury to the minor created by a parent, by other than accidental means, and the acts of the parent would be likely to cause impairment of the emotional health and/or impairment of the bodily functions of the minor.
A shelter care hearing was held on April 4 in the circuit court. *388 The State called three witnesses, and Rhonda testified on her own behalf.
The first witness, Sergeant Susan Welch of the Urbana police department, testified she responded to a domestic disturbance call at the Rankin home on March 26, 1988. Sergeant Welch stated Rhonda had been beaten and bruised about the face. Rhonda told Sergeant Welch her boyfriend had been in the apartment and beaten her 15 minutes beforehand. Lloyd, however, told Sergeant Welch that Rhonda arrived at the residence 15 minutes beforehand and told Lloyd her boyfriend had beaten her.
The second witness, Sergeant Everett Krueger of the Urbana police department, testified he responded to a call at the Rankin home on March 31, 1988. When he arrived he found Rhonda lying on the floor in the apartment. He said he also saw the minor in the apartment, and she appeared to be in very good health. Rhonda was transported to Carle Hospital, where she gave conflicting accounts concerning her injuries. Lloyd told Sergeant Krueger an account which conflicted with Rhonda's. Sergeant Krueger also stated he witnessed Lloyd strike Rhonda, apparently without provocation, while the couple walked along a street in the summer of 1987.
The third witness, Debra Tullis, supervisor in the division of child protection for the Illinois Department of Children and Family Services (DCFS), testified next. Tullis interviewed Rhonda on March 31, and Rhonda said she had not been beaten. Tullis also stated she interviewed Lloyd on March 31, and he told her Rhonda had been beaten by her boyfriend.
Rhonda testified on her own behalf, stating she was beaten by her boyfriend on March 26 and fell down in her home on March 31. At the conclusion of the hearing, the court found probable cause for the minor to be placed in temporary custody with DCFS.
An adjudicatory hearing was held on April 20, 1988. The first witness to testify was Dr. Jens Yambert. According to Dr. Yambert, Rhonda's medical chart at Carle Hospital, where Dr. Yambert practices, showed that from April 1981 through April 1988 Rhonda made 62 emergency room visits. Dr. Yambert stated Rhonda's explanations for her injuries, nine of which he treated in the emergency room from 1984 to 1988, were inconsistent with her injuries. Dr. Yambert believed Rhonda was the victim of multiple batterings. Dr. Yambert testified Rhonda was not suffering from any physical abnormalities that would have caused her injuries.
Patricia Metzler, a registered nurse at Carle Hospital, testified next. She stated she was working in the emergency room on March *389 31, 1988, when Rhonda was admitted. Metzler stated Rhonda said her girl friend had beaten her.
Diane Kouzmanoff, a neighbor of the Rankins, also testified. Kouzmanoff stated she heard strange noises coming from the Rankin apartment on March 26. She knocked on the door but received no answer, so she called the police. She also stated she heard strange noises coming from the Rankin apartment before March 26.
Sergeant Welch also testified. She stated she responded to a domestic disturbance call at the Rankin home on March 26, 1988. During that visit, Sergeant Welch received the two previously mentioned conflicting stories from Rhonda and Lloyd concerning Rhonda's bruises. Rhonda also initially told Sergeant Welch that she was alone with the minor in the apartment; however, upon inspection of the premises, Sergeant Welch found Lloyd in the bathroom. Sergeant Welch told Rhonda she thought Lloyd had beaten her. Rhonda responded by indicating she had done something to deserve it, she had hit him before he hit her. Sergeant Welch also stated she could not locate Steve Anderson, Rhonda's alleged boyfriend, or any information about him.
Sergeant Everett Krueger was the fifth witness to testify at the adjudicatory hearing. His testimony was similar to his testimony during the shelter care hearing.
The State's final witness was Debra Tullis. Tullis stated she interviewed Rhonda on March 31. Rhonda told Tullis she fell in her home on March 31, and that on March 26 she went to the residence of her boyfriend where he beat her. Tullis also interviewed Lloyd on March 31. Rhonda was present during this interview. Lloyd stated that on March 26 Rhonda left home and when she returned she told Lloyd her boyfriend had beaten her. Lloyd also told Tullis that on March 31 he and Rhonda had been to a cookout, went home, fell asleep, and he awoke when he heard Rhonda experiencing breathing trouble. Tullis said Lloyd asked her repeatedly throughout the interview what would happen if he admitted he had a problem, and he had tears in his eyes as well. Tullis also stated she tried to locate Steve Anderson or any information about him, but was unsuccessful. Finally, Tullis stated she took custody of the minor. According to Tullis, the child appeared to be a healthy three-month-old baby.
At the conclusion of the evidence, the trial court found the minor was neglected and/or abused due to an environment injurious to her welfare when she resides with her parents. The court found for the parents as to count II of the State's petition, which alleged the minor was abused due to a substantial risk of physical injury.
*390 Prior to the dispositional hearing, a home and background report was prepared by DCFS. The report indicated the Rankin home was furnished adequately and was fairly neat and clean on two visits. The report also stated the minor was a happy baby. The report noted a problem of roaches in the Rankin home. Rhonda admitted there were years of physical abuse from Lloyd.
On May 25, 1988, the dispositional hearing was held. In its dispositional order, the court stated the minor was neglected and declared her a ward of the court. The court found the neglect was not the result of physical abuse of the minor inflicted by either parent. The court also found the mother is unable and the father is unfit for reasons other than financial to care for the minor. DCFS was appointed guardian with the power to place. Lloyd filed timely notice of appeal.
 1 We initially note that cases concerning parental rights are sui generis. (In re Dalton (1981), 98 Ill. App.3d 902, 909, 424 N.E.2d 1226, 1230.) In addition, parents' rights and responsibilities are of deep human importance. (In re Paul (1984), 101 Ill.2d 345, 351-52, 461 N.E.2d 983, 985.) Parental rights and responsibilities involve a fundamental liberty interest protected under the fourteenth amendment. (Santosky v. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599, 606, 102 S.Ct. 1388, 1394-95.) The trial court's finding of abuse or neglect will not be disturbed by a reviewing court unless contrary to the manifest weight of the evidence. In re T.H. (1986), 148 Ill. App.3d 877, 882, 499 N.E.2d 988, 991; In re Custody of Brunken (1985), 139 Ill. App.3d 232, 239, 487 N.E.2d 397, 401.
Count I of the State's petition alleged neglect due to an environment injurious to the minor's welfare. Section 2-3(2)(b) of the Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802-3(2)(b)) states a minor whose environment is injurious to his or her welfare is an abused minor. In its adjudicatory order the trial court stated the minor was neglected and/or abused due to an environment injurious to her welfare when she resides with her parents. At the adjudicatory hearing the trial court stated it realized injurious environment is defined statutorily as abuse. The court stated a belief that the Juvenile Court Act previously designated injurious environment as neglect and believed confusion exists over legislative intent concerning injurious environment. Finally, the court stated: "I am clearly intending to find the environment is injurious to the welfare of this child, be that neglected or abused or both." In its dispositional order the court found the minor to be neglected and stated the neglect was not the result of physical abuse, without mentioning injurious environment.
 2 Prior cases which discussed neglect under the former statute *391 when injurious environment was part of that concept generally agreed that neglect could not be defined with particularity, but rather each case must proceed on its own facts. (In re Christenberry (1979), 69 Ill. App.3d 565, 567, 387 N.E.2d 923, 925.) Further, as our supreme court has elaborated, neglect "`is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes.'" In re Stilley (1977), 66 Ill.2d 515, 520, 363 N.E.2d 820, 822, quoting People ex rel. Wallace v. Labrenz (1952), 411 Ill. 618, 624, 104 N.E.2d 769, 773.
 3 Parental autonomy is not absolute. The State has a role as parens patriae, the ultimate protector of the rights of minors. The parents' rights may be secondary to the State's strong interest in protecting children where the potential for abuse or neglect exists, and the State may separate the parents from the child in such situations. (Lehman v. Stephens (1986), 148 Ill. App.3d 538, 547, 499 N.E.2d 103, 109-10.) However, proceedings for adjudication of wardship represent a significant intrusion into the sanctity of the family which should not be undertaken lightly. In re Harpman (1985), 134 Ill. App.3d 393, 396-97, 480 N.E.2d 873, 875.
 4 The trial court, after receiving extensive evidence, determined the minor was neglected and/or abused due to an injurious environment. While A.D.R. was never physically abused, Rhonda was subjected to repeated physical abuse from Lloyd. The record reflects Rhonda made over 60 hospital emergency room visits from April 1981 to April 1988, the date of the adjudicatory hearing. The trial court noted some of the injuries Rhonda sustained may have been accidental; however, it did not believe all were accidental. Indeed, a witness saw Lloyd strike Rhonda. We find the abuse of Rhonda by Lloyd created an environment injurious to the minor's welfare. In light of the deference given the trial court in these matters, we conclude its finding of abuse due to an injurious environment is not against the manifest weight of the evidence.
The respondent father urges us to follow the holdings of In re Harpman (1985), 134 Ill. App.3d 393, 480 N.E.2d 873, In re Principato (1978), 65 Ill. App.3d 706, 382 N.E.2d 662, and In re Baby Boy Butt (1979), 76 Ill. App.3d 587, 395 N.E.2d 1. In Harpman, this court found the trial court's authority to adjudge wardship on the basis of neglect is limited to minors who are actually neglected and does not extend to those who are thought to be subject to neglect in the future. (Harpman, 134 Ill. App.3d at 397, 480 N.E.2d at 875.) This court construed section 2-4 of the Juvenile Court Act (Act) (Ill. Rev. *392 Stat. 1983, ch. 37, par. 702-4), which has been recodified as section 2-3(1) of the Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802-3(1)). Harpman found the petition for wardship there failed to set forth sufficient facts to state a cause of action for neglect. On appeal after remand (In re Harpman (1986), 146 Ill. App.3d 504, 496 N.E.2d 1242), this court found the State amended its petition to allege abuse, based on the father's sexual abuse of his female children by a prior marriage. This changed the cause of action from one of neglect by reason of not providing proper care for the minors to one of abuse by reason of maintaining an environment injurious to the minors' welfare. This court affirmed the trial court's denial of the motion to dismiss and its finding that the parents' three minors were abused by reason of an injurious environment.
In Principato, the court held the trial court's finding of neglected minors was contrary to the manifest weight of the evidence. (Principato, 65 Ill. App.3d 706, 382 N.E.2d 662.) Respondent father argues the instant case is very similar to Principato because in that case the parents had gone through a traumatic period in their marriage, the husband had been physically abusive to the wife and, in addition, there were allegations of drug abuse. Principato, however, can be distinguished from the instant case. The physical abuse by the husband toward the wife was only during the fall of 1976, and the parties were divorced by February 1977. In the instant case, the physical abuse by Lloyd against Rhonda continued for apparently at least seven years, and the parties remained married throughout those seven years. In addition, the children in Principato were cared for by their grandparents when their mother was not at home.
The final case respondent urges us to follow is Baby Boy Butt (76 Ill. App.3d 587, 395 N.E.2d 1). In Baby Boy Butt, the court found the two minor children were not neglected even though the mother was found guilty of involuntary manslaughter for the death of a third child. The court also stated, however, that the details of the mother's conviction could be considered to the extent the details were relevant to the issue of neglect.
Baby Boy Butt is easily distinguished from the instant case. The children in Baby Boy Butt were not neglected because the deceased child was the only child the mother had difficulty with, and the child was a stepdaughter of the mother while the other children were her natural children. Also, the mother claimed the problems between her and her stepdaughter were due to interference by the paternal grandmother and her husband, the stepdaughter's natural father, who favored the stepdaughter over the other children. In addition, the *393 mother had a warm and loving relationship with her natural children. In the instant case, the record does not indicate any special relationship between A.D.R. and either parent or any strained relationship between the abused mother and the abusive father. Indeed, the record reflects both the couple's desire to remain married and the integrity of the marriage through seven years of apparent abuse by Lloyd.
 5 The Baby Boy Butt court quoted In re Nyce (1971), 131 Ill. App.2d 481, 487, 268 N.E.2d 233, 237, the finding which Harpman reiterated, that the scope of section 2-4 of the Act (Ill. Rev. Stat. 1975, ch. 37, par. 702-4) was limited to minors who are actually neglected and it does not extend to those who are thought to be subject to neglect in the future. (Baby Boy Butt, 76 Ill. App.3d at 593, 395 N.E.2d at 5.) This quote was also recited in In re Brooks (1978), 63 Ill. App.3d 328, 338, 379 N.E.2d 872, 880. In Nyce, however, the mother was thought to be immature but never had custody of the child. In Brooks, the court stated the primary consideration in a child neglect case is the welfare of the child and "[w]hen faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury," and thus "[i]t was not unreasonable for the trial court to conclude that Yvette [the minor in issue] was subjected to an environment of physical abuse and that it was in Yvette's best interests to adjudicate her a ward of the court." (Brooks, 63 Ill. App.3d at 339, 379 N.E.2d at 881.) The Brooks court also noted that section 4-8(2) of the version of that act applicable there (Ill. Rev. Stat. 1975, ch. 37, par. 704-8(2)) indicated physical abuse of a child may constitute neglect. (Brooks, 63 Ill. App.3d at 337, 379 N.E.2d at 879.) We note section 2-21(2) of the Act of 1987 indicates physical abuse of a minor may constitute abuse, neglect, or dependency. (Ill. Rev. Stat. 1987, ch. 37, par. 802-21(2).) In Brooks, there were three children. Two were abused but the third, Yvette, was not. All three children were natural children of the abusive mother, so she had complete responsibility for and control over them. The abusive father in the instant case also has some responsibility for and control over his abused wife and the minor child who was not physically abused. While Brooks involved abuse to one child as a basis for finding neglect as to another, this case involves physical abuse of a spouse. While the facts of Brooks are different, it is not unreasonable for a trial judge to conclude continuing physical abuse by one parent to another will cause emotional damage to a child and thus constitute neglect. Here, there were seven years of physical abuse by Lloyd of Rhonda. The court need not wait until A.D.R. herself becomes the victim of physical abuse nor wait until the *394 repeated beatings of her mother cause so much emotional damage that A.D.R. is permanently affected.
After extensive review of the record, we conclude the minor was not receiving care necessary for her well-being and thus the evidence supports a finding of neglect under section 2-3(1) of the Act of 1987.
The trial court's finding of neglect and abuse of the minor was not against the manifest weight of the evidence. Therefore, the circuit court of Champaign County is affirmed.
Affirmed.
McCULLOUGH, P.J., and LUND, J., concur.